IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CT-3192-BO

| | |
|---|---|
| JOHN E. MCGHEE, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, et al., ) | |
| Defendants. ) | |

John E. McGhee ("plaintiff" or "McGhee"), a federal inmate, filed this suit pursuant to the Federal Tort Claims Act ("FTCA") and Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). In a prior court order, the Bivens claims and FTCA failure to protect claim were dismissed. [D.E. 26], Order, July 22, 2011. The sole issue which remains is an FTCA claim for negligence against the United States. Presently, defendant is before the court on a motion to dismiss for lack of jurisdiction, motion to dismiss for failure to state a claim, or in the alternative, motion for summary judgment as to that issue [51]. McGhee responded [D.E. 59], and the matter is ripe for ruling.

The court begins with the brief factual summary from a prior order.

> Taking the facts as alleged by plaintiff, on August 1, 2008, a fight broke out, two inmates assaulted plaintiff, and plaintiff's jaw was broken. The fight occurred at the indoor recreation area of Federal Correctional Institution - Butner II ("FCI-Butner II"). The following day, on August 2, 2008, medical staff assessed plaintiff's injuries. He was to be given pain medication and an x-ray was scheduled. However, plaintiff states the medication and nutritional supplement was delayed and he was not seen by a doctor or x-rayed until August 7, 2008. While waiting for the medical attention, he was in pain and unable to chew. On August 14, 2008, plaintiff underwent surgery. He claims that before and after his surgery, defendants failed to provide medical attention, pain medication, and nutritional supplements in a timely or consistent manner. He also claims the medical staff left the 'archbars' in his jaw over two weeks longer than reasonable, which has resulted in sever pain and deformity of his jaw. One administrative grievance provided by plaintiff does state

that "[w]hile we regret that there may have been some delay in getting the archbars removed, there was no harm done as a result of prolonged retention of the archbars."

/4/11 Order at 1-2.

Additional Facts

Now before the court is additional information which factually resolves the remaining issue. It is undisputed that on August 1, 2008, plaintiff was involved in a fight with two other inmates in the indoor recreation area of FCI Butner II, wherein McGhee sustained a broken jaw. See Am. Compl. ¶ 11; [D.E. 53], Declaration of Scott Gregory ("Gregory Decl."), ¶ 4 and attachments; [D.E. 54], Declaration of Brian Conner ("Conner Decl."), ¶ 4 and attachments; [D.E. 55], Declaration of Robin Hunter-Buskey ("Hunter-Buskey Decl."), ¶¶ 3-7 and attachments. FCI Butner II staff was not informed of the fight on August 1st. Gregory Decl. ¶ 4. The following day, through an anonymous informant, the incident was discovered and all of the involved inmates were summoned as part of the investigation into the incident. Gregory Decl. ¶¶ 4-6. During the initial interview, none of the inmates, including plaintiff, was forthcoming about the incident. Id. ¶ 6; Conner Decl. ¶¶ 6-7. None of the inmates involved in the altercation sought medical attention independently, nor did they seek medical attention prior to being summoned for questioning. Conner Decl. ¶ 5. The investigating Lieutenant escorted plaintiff to Health Services where he was evaluated by a paramedic. Gregory Decl. ¶ 5; Conner Decl. ¶¶ 6-7; Amended Compl., ¶ 12.

McGhee reported a sore jaw, and had bruising to his right eye, and discoloration to the left side of his face. Conner Decl. ¶ 6. When questioned, plaintiff stated, "I guess I got hit a couple of times," and told the paramedic to look at the camera. Id. ¶ 7. On August 2, 2008, plaintiff was uncooperative, and attempted to hide his injuries from both the correctional staff and the paramedic who evaluated him that day. Id. ¶ 5; Gregory Decl. ¶ 6 and Attachments 1-3.

2

On August 3, 2008, an x-ray was ordered, and plaintiff was prescribed Motrin for pain and Ensure, a liquid nutritional supplement. Conner Decl. ¶ 8; Hunter-Buskey Decl. ¶ 3. Following McGhee's medical evaluation, he was transferred to the Special Housing Unit ("SHU") of FCI Butner II. Gregory Decl. ¶ 8. On August 6, 2008, plaintiff was transferred to the SHU at the Low Security Correctional Institution in Butner, North Carolina ("LSCI Butner"). Id. ¶ 8; Am. Compl. ¶ 13. He remained in the LSCI Butner SHU under administrative detention status, pending the outcome of the investigation. Id. Upon arrival at LSCI Butner, plaintiff was assessed by medical staff, and he made no complaints. Hunter-Buskey Decl. ¶ 4.

On August 7, 2008, a physician assistant evaluated plaintiff. Id. ¶ 5; Amended Compl. ¶ 14. McGhee stated that he had been involved in an altercation on August 1, 2008, wherein he had been hit in his head and face and reported numbness of his face and lip. Hunter-Buskey Decl. ¶ 14. He reported that he thought his jaw was broken. Id. He reported that he could not chew, had been unable to eat, and he had swelling around his eyes or neck. Id. McGhee reported that he had received his prescribed Ensure over the weekend. Id. The physician assistant noted transcribed in the medical records that plaintiff had no visual disturbances, no tinnitus (or ringing in his ears), no nausea or vomiting, and no other injuries. Id. McGhee was prescribed Motrin, as needed for pain, and x-rays were ordered. Id. The physician assistant did not prescribe a nutritional supplement, as a current, active prescription for Ensure was documented. Id., Attach. 1 at 37, 78.

On August 8, 2008, McGhee was evaluated by a dental officer at the institution. Hunter-Buskey Decl. ¶ 6, Attach. 1 at 140. Panorex x-rays were taken, indicating a fracture of the left body of the mandible (jaw bone), from the left molar region to the left angle of the mandible. Id.; Am. Compl. ¶ 17. The institution's dental officer noted that he had placed a call to an oral surgeon for

3

a consultation. Id., Attach. 1 at 57, 140. The dental officer also prescribed an oral rinse and Amoxicillin, three times per day, for seven days. Id., Attach. 1 at 18, 33, 78. The same physician assistant who assessed McGhee previously on August 7th reviewed the x-rays and noted the facial/jaw fracture. Id. ¶ 7, Attach. 1 at 8, 69. After this finding, she also prescribed a new prescription for an Ensure supplement three times per day, for fourteen days. Id. The physician assistant further noted the pending request for consultation with an oral surgeon. Id.

On August 11, 2008, McGhee was evaluated by an outside oral surgeon, id. ¶ 8, Attach. 1 at 57-64, 68, who found multiple facial fractures requiring "closed reduction of the left arch fracture." [D.E. 56], Declaration of Ray White, D.D.S., Ph.D. ("White Decl."), ¶ 8. The surgical repair of facial fractures, assuming no other injuries are present, is not considered to be an emergency surgery. Id. The surgery is considered to be urgent, but a two-week time period between the injury and the surgical repair is not considered to be unusual in field of oral surgery. Id. Surgery was scheduled and performed on August 14, 2008. Id., Attach. 1 at 45, 50-51, 99; Amended Compl. ¶ 18. Arch bars were placed into McGhee's mouth, to stabilize his jaw to enable healing. Id. With a facial fracture such as McGhee's, "fracture arch bars are ligated to the teeth . . . to properly align the jaws while the fracture heals." White Decl. ¶ 11. In McGhee's case, "the arch bars [were] affixed to the teeth, on both his upper and lower jaws, and his jaw was wired closed until the fracture healed." Id. "His facial fracture was repaired using small screws which were left in place following the healing of the fracture." Id.

"Typically, arch bars are in place for two months while a fracture heals. In some cases, a longer time frame is necessary for treatment." White Decl. ¶ 12. "A time frame of three months after fracture repair is not that unusual." Id. Following the surgery and upon his return to the

4

institution, McGhee was prescribed Oxycodone and a soft diet. Hunter-Buskey Decl. ¶ 8, Attach. 1 at 74, 76-77, 98-99, 118-122, 129, 131.

On August 19, 2008, McGhee returned to the oral surgeon who stated that a follow-up appointment should be scheduled in two weeks. Hunter-Buskey Decl. ¶ 9, Attach. 1 at 6, 66; Am. Compl. ¶ 19. On September 30, 2008, McGhee transferred back to FCI II Butner, from the SHU at LSCI Butner. Hunter-Buskey Decl. ¶ 10, Attach. 1 at 53, 65; Gregory Decl. ¶ 8. On October 2, 2008, a consultation request was submitted for plaintiff to be seen by the oral surgeon in follow-up to surgery. Hunter-Buskey Decl. ¶ 11; Amended Compl. ¶ 19. On October 3, 2008, McGhee was seen by the institution's dental officer who stated the arch bars needed to be removed. Hunter-Buskey Decl. ¶ 12. The dental officer noted that the consultation request had been submitted the previous day, and it was subsequently approved by the institution's Utilization Review Committee. Id., Attach. 1 at 48.

On November 4, 2008, McGhee was seen by the oral surgeon, for evaluation for removal of the arch bars. Hunter-Buskey Decl. ¶ 13, Attach. 1 at 44. The oral surgeon stated that the arch bars should be removed as soon as possible. Id. On November 12, 2008, the institution's Utilization Review Committee approved the consultation request that McGhee be seen by the oral surgeon for removal of the arch bars. Id., Attach. 1 at 1-4, 47. On November 17, 2008, the oral surgeon removed McGhee's arch bars. Id. ¶ 14, Attach. 1 at 40, 49. Reports of both the oral surgeon who performed plaintiff's surgery and of an oral surgeon who reviewed plaintiff's medical records, are that the repair of plaintiff's facial injury was successful. Id.; White Decl. ¶¶ 10-12. Plaintiff's fractured jaw healed properly, and x-rays post-surgery document that his jaw aligned properly. White Decl. ¶ 12.

5

According to the official Bureau of Prisons medical records, plaintiff received several doses of his prescribed liquid nutritional supplement, Ensure, and pain relief medication throughout the period of August 7, 2008 through August 14, 2008. During this period of time, plaintiff was housed in the SHU at LSCI Butner. Because the SHU is a locked down unit, the inmates are not permitted to physically present themselves at the institution's "pill line" to receive their prescribed medications. Hunter-Buskey Decl. ¶ 15. When a BOP inmate is housed in the SHU, medical staff make rounds through the SHU three times per day, in order to provide any prescribed medications to the inmates in the unit. Id. Medical staff who dispense prescription medication in SHU make rounds in the early morning, around noon, and again in the evening. Id. Inmates have the same right to accept or refuse the offered medication as those housed in other facilities at FCC Butner. According to his medical records, during the period of August 7 through August 14, 2008, plaintiff received 15 separate doses of his prescribed Ensure nutritional supplement. Id. ¶ 16. During the period of August 8 through 18, 2008, he received 39 separate doses of his prescribed Motrin for pain relief. Id. ¶ 17. As stated by the oral surgeon who reviewed plaintiff's medical records, a prescription of 800 mg. of Ibuprofen (trade name – Motrin), is considered to be adequate for pain control in most patients. White Decl. ¶ 9.

According to plaintiff's official BOP medical records, during the period of August 7 through August 14, 2008, Plaintiff received 15 separate doses of his prescribed Ensure nutritional supplement. Id. ¶ 16. He specifically accepted the prescribed dosage, when offered by medical staff making rounds in the SHU, on the following dates and times:

. August 7, 2008 – 6:45 a.m.
. August 8, 2008 – 7:30 p.m.
. August 9, 2008 – 6:45 a.m., 11:30 a.m., 7:30 p.m.
. August 10, 2008 – AM round, 12:00 p.m., PM round

6

. August 11, 2008 – 12:00 p.m., PM round
. August 12, 2008 – PM round
. August 13, 2008 – AM round, 12:00 p.m.
. August 14, 2008 – AM round, 12:00 p.m.

Id., Attach. 1 at 84-94.

Discussion

    i.    Summary Judgment

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading. Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted & emphasis removed). A mere scintilla of evidence supporting the case is not enough. Anderson, 477 U.S. at 252. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. Matsushita Elec. Indus. Co., 475 U.S. at 586-587. The court can rely on the medical affidavits and prison medical records, including mental health records, in ruling on a motion for summary judgment. See generally, Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998); Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); Marshall v. Odom, 156 F. Supp. 2d 525, 530 (D. Md. 2001); Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982).

ii. FTCA Negligence Claim

The FTCA is a waiver of the United States' sovereign immunity, which permits a claimant to sue the United States for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . .." 28 U.S.C. § 2675(a); United States v. Kubrick, 444 U.S. 111, 116 n. 4 (1979). Under the FTCA, the substantive law of the place where the act or omission occurred is to be applied, which in this case is North Carolina. Cibula v. United States, 551 F.3d 316, 319 (4th Cir. 2009) (citing 28 U.S.C. § 1346(b)(1)).

North Carolina law requires that "in order to prevail in a negligence action, [a plaintiff] must offer evidence of the essential elements of negligence: duty, breach of duty, proximate cause, and damages." Camalier v. Jeffries, 340 N.C. 699, 460 S.E.2d 133, 136 (1995); Hart v. Ivey, 332 N.C. 299, 420 S.E.2d 174 (1992) ("Actionable negligence is the failure to exercise the degree of care which a reasonable and prudent person would exercise under similar conditions. A defendant is liable for his negligence if the negligence is the proximate cause of injury to a person to whom the defendant is under a duty to use reasonable care." (internal citations omitted)).

Here, on the record now before the court, negligence has not been shown. As for the initial delay in the medical care, the delay occurred because plaintiff did not report the incident or seek medical attention after the incident. Thorpe v. TJM Ocean Isle Partners LLC, __ S.E.2d __, 2012 WL 4868010, at *3 (N.C. App. Oct. 16, 2012) (citing Sawyer v. Food Lion, Inc., 144 N.C. App. 398, 401 (2001)) (Under North Carolina law, a plaintiff is completely barred from recovering for any injury proximately caused by the plaintiff's contributory negligence." ); Thompson v. Bradley, 142 N.C. App. 636, 640, 544 S.E.2d 258, 261 (2001) ("Contributory negligence is the breach of duty of a plaintiff to exercise due care for his or her own safety, such that the plaintiff's failure to exercise due

8

care is a proximate cause of his or her injury."); Martishius v. Carolco Studios, Inc., 355 N.C. 465, 467, 562 S.E.2d 887, 890 (2002) (The North Carolina Supreme Court has held that "[t]he existence of contributory negligence is ordinarily a question for the jury; such an issue is rarely appropriate for summary judgment, and only where the evidence establishes a plaintiff's negligence so clearly that no other reasonable conclusion may be reached.") Furthermore, McGhee appears to concede the claim as he "takes issue with the delays by employees after the surgery (mostly) and only slightly with the delay in treatment prior to surgery." Pl.'s Response to Gov't Mot. To Dismiss, Summ. J., at 11. Thus, plaintiff's claim fails.

As for the allegation of negligence for failure to provide adequate nutrition in liquid form to plaintiff between August 7, 2008, and August 14, 2008, the record contradicts this allegation. As set out above, plaintiff received 15 separate doses of his prescribed Ensure nutritional supplement between those dates and the claim fails.

As for the allegation of negligence for failure to provide pain medication, again the record contradicts this allegation. Plaintiff was prescribed Motrin on August 3, 2008, and again on August 7, 2008. The August 3 prescription was for 600 mg. every four to six hours, as needed for pain. Conner Decl. ¶ 8; Hunter-Buskey Decl. ¶ 3, Attach. 1 at 80. The second prescription for Motrin (or Ibuprofen), entered on August 7, was for 800 mg., three times per day, as needed for pain. Hunter-Buskey Decl. ¶ 7, Attach. 1 at 10, 36. During the period of August 8 through 18, 2008, plaintiff received 39 separate doses of his prescribed Motrin for pain relief. Id. ¶ 17. As stated by the oral surgeon who reviewed plaintiff's medical records, a prescription of 800 mg. of Ibuprofen (trade name – Motrin), is considered to be adequate for pain control in most patients. White Decl. ¶ 9.

9

Lastly, as for the allegation of negligence for removal of the arch bar in a timely manner, the claim fails. It is clear from the record that there was a delay in removal of the arch bar, however, such a delay is not considered unusual or unreasonable. Plaintiff cannot establish that defendant acted negligently in keeping the arch bar in place for a period of three months.

Conclusion

Accordingly, defendant's motion for summary judgment [DE. 51] is GRANTED. Furthermore, any negligence claim not specifically addressed likewise fails under the record before the court. Having so determined, all other pending motions are DENIED as MOOT [D.E. 44- 45]. The Clerk is DIRECTED to CLOSE the case.

SO ORDERED, this the 25 day of March 2013.

TERRENCE W. BOYLE
United States District Judge